**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

```
-----------------------------x
                             :
CHESSARAE D. GIPPS           :      Civil No. 1:17CV01171 (HBF)
                             :
v.                           :
                             :
NANCY A. BERRYHILL, ACTING   :
COMMISSIONER, SOCIAL SECURITY :
ADMINISTRATION               :
                             :
-----------------------------x
```

<u>**RULING ON CROSS MOTIONS**</u>

Plaintiff Chessarae D. Gipps brings this action pursuant to 42 U.S.C. §405(g), seeking review of a final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security, 42 U.S.C. §401 <u>et seq</u>. ("the Act"). Plaintiff has moved to reverse or remand the case for a rehearing. The Commissioner has moved to affirm.

For the reasons set forth below, plaintiff's Motion for Judgment on the Pleadings **[Doc. #19]** is **GRANTED.** Defendant's Motion for Judgment on the Pleadings **[Doc. #27]** is **DENIED.**

**I. ADMINISTRATIVE PROCEEDINGS**

The procedural history of this case is not disputed. Plaintiff protectively filed an application for DIB and SSI on

October 29, 2013, alleging disability as of July 28, 2012.[1] [Certified Transcript of the Record, Compiled on March 10, 2018, Doc. #7 (hereinafter "Tr.") 19, 102-03; 190-91; 192-97]. Plaintiff alleged disability due to injury to her back and neck, constant headaches and anxiety [Tr. 216]. Her claims were denied on February 5, 2014. [Tr. 19, 102-03]. Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ") on February 25, 2014. [Tr. 118-20].

On March 24, 2016, Administrative Law Judge ("ALJ") Bryce Baird held a hearing, at which plaintiff appeared with counsel and testified. [Tr. 46-101]. Vocational Expert Michele Erbacher also testified at the hearing. [Tr. 91-99]. On September 1, 2016, the ALJ found that plaintiff was not disabled, and denied her claim. [Tr. 16-40]. Plaintiff filed a timely request for review of the hearing decision on October 24, 2016. [Tr. 14-15; 189]. On October 25, 2017, the Appeals Council denied review, thereby rendering ALJ Baird's decision the final decision of the Commissioner. [Tr. 1-5]. The case is now ripe for review under 42 U.S.C. §405(g).

Plaintiff, represented by counsel, timely filed this action for review and moves to reverse and/or remand the Commissioner's decision.

---

[1] Plaintiff's date last insured for Title II benefits is June 30, 2013. [Tr. 21].

## II. STANDARD OF REVIEW

The review of a social security disability determination involves two levels of inquiry. First, the Court must decide whether the Commissioner applied the correct legal principles in making the determination. Second, the Court must decide whether the determination is supported by substantial evidence. Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998) (citation omitted). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983) (citation omitted).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. See Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence."). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of

the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (alteration added) (citation omitted). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988) (citation omitted). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." Johnston v. Colvin, Civil Action No. 3:13-CV-00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014) (internal citations omitted).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to

determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." <u>Talavera v. Astrue</u>, 697 F.3d 145, 151 (2d Cir. 2012) (citations and internal quotation marks omitted). "[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports <u>the ALJ's decision</u>." <u>Bonet ex rel. T.B. v. Colvin</u>, 523 F. App'x 58, 59 (2d Cir. 2013)(citations omitted).

## III. SSA LEGAL STANDARD

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits.

To be considered disabled under the Act and therefore entitled to benefits, Ms. Gipps must demonstrate that she is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); <u>see also</u> 20 C.F.R. §404.1520(c)

(requiring that the impairment "significantly limit[ ] ...
physical or mental ability to do basic work activities" to be
considered "severe").[2]

There is a familiar five-step analysis used to determine if
a person is disabled. See 20 C.F.R. §404.1520(a)(4). In the
Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is
> currently engaged in substantial gainful activity. If he
> is not, the Secretary next considers whether the
> claimant has a "severe impairment" which significantly
> limits his physical or mental ability to do basic work
> activities. If the claimant suffers such an impairment,
> the third inquiry is whether, based solely on medical
> evidence, the claimant has an impairment which is listed
> in Appendix 1 of the regulations. If the claimant has
> such an impairment, the Secretary will consider him
> disabled without considering vocational factors such as
> age, education, and work experience; the Secretary
> presumes that a claimant who is afflicted with a "listed"
> impairment is unable to perform substantial gainful
> activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per
curiam). If and only if the claimant does not have a listed
impairment, the Commissioner engages in the fourth and fifth
steps:

> Assuming the claimant does not have a listed impairment,
> the fourth inquiry is whether, despite the claimant's
> severe impairment, he has the residual functional
> capacity to perform his past work. Finally, if the
> claimant is unable to perform his past work, the
> Secretary then determines whether there is other work

---

[2] DIB and SSI regulations cited herein are virtually identical.
The parallel SSI regulations are found at 20 C.F.R. §416.901 et
seq., corresponding to the last two digits of the DIB cites
(e.g., 20 C.F.R. §404.1520 corresponds with 20 C.F.R. §416.920).

which the claimant could perform. Under the cases
previously discussed, the claimant bears the burden of
proof as to the first four steps, while the Secretary
must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens

of production and persuasion, but if the analysis proceeds to

the fifth step, there is a limited shift in the burden of proof

and the Commissioner is obligated to demonstrate that jobs exist

in the national or local economies that the claimant can perform

given his residual functional capacity." Gonzalez ex rel. Guzman

v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d

Cir. 2010) (citing 68 Fed. Reg. 51155 (Aug. 26, 2003)); Poupore

v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam)).

"Residual functional capacity" is what a person is still capable

of doing despite limitations resulting from her physical and

mental impairments. See 20 C.F.R. §§404.1545(a), 416.945(a)(1).

"In assessing disability, factors to be considered are (1)

the objective medical facts; (2) diagnoses or medical opinions

based on such facts; (3) subjective evidence of pain or

disability testified to by the claimant or others; and (4) the

claimant's educational background, age, and work experience."

Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978) (citation

omitted). "[E]ligibility for benefits is to be determined in

light of the fact that the Social Security Act is a remedial

statute to be broadly construed and liberally applied." Id.
(citation and internal quotation marks omitted).

## IV.  THE ALJ'S DECISION

Following the above-described five step evaluation process,
ALJ Baird concluded that plaintiff was not disabled under the
Social Security Act. [Tr. 16-45]. At step one, the ALJ found
that plaintiff had not engaged in substantial gainful activity
since July 28, 2012, the alleged onset date. [Tr. 21].

At step two, the ALJ found that plaintiff had cervicalgia,
lumbago, headaches/migraines, and depression with anxiety, all
of which are severe impairments under the Act and regulations.
[Tr. 22-23].

At step three, the ALJ found that plaintiff's impairments,
either alone or in combination, did not meet or medically equal
the severity of one of the listed impairments in 20 C.F.R. Pt.
404, Subpart P, Appendix 1. [Tr. 23]. The ALJ specifically
considered Listing 1.04 (disorders of the spine); 14.09
(inflammatory arthritis); 1.00 (musculoskeletal impairments;
11.00 (neurological disorders); 14.00 (impairments of the immune
system); 12.02 (organic mental disorders); 12.04 (affective
disorders); and 12.06 (anxiety related disorders). [Tr. 23-25].
The ALJ also conducted a psychiatric review technique and found
that plaintiff had a mild restriction in activities of daily
living or social functioning, and a moderate restriction in

concentration, persistence or pace. [Tr. 24]. The ALJ found no episodes of decompensation. [Tr. 24].

Before moving on to step four, the ALJ found plaintiff had the RFC

> to perform the full range of light work, as defined in 20 C.F.R. §404.1567(b) and 416.967(b) with additional limitations. Specifically, the claimant can occasionally lift and carry 20 pounds; can frequently lift and carry 10 pounds; can sit for up to 6 hours total in an 8-hour workday; and can stand and/or walk for up to 6 hours total in an 8-hour workday. She requires a sit/stand option that allows her to stand, walk or stretch for up to 5 minutes after sitting for 30 minutes, or sit for up to 5 minutes after standing or walking for 20, all while remaining on task. She can frequently stoop, kneel, or crouch; is unable to crawl or climb ladders, ropes, scaffolds; can perform simple, routine tasks that can be learned after a short demonstration or within 30 days; and can perform work [that] would not be of a repetitive nature, such as on a production line.

[Tr. 25].

At step four, the ALJ found plaintiff was unable to perform any past relevant work. [Tr. 37]. At step five, after considering plaintiff's age, education, work experience and RFC, the ALJ found that jobs existed in significant numbers in the national economy that plaintiff could perform.[3] [Tr. 37-40].

---

[3] Plaintiff was born on March 13, 1983, and was 29 years old as of the alleged onset date of July 28, 2012. [Tr. 190]. She is currently 36 years old. She is right-handed. [Tr. 230]. Plaintiff completed 11th grade in high school and has not obtained a GED. [Tr. 37]. She has past relevant work in

The ALJ concluded that plaintiff had not been under a disability from July 28, 2012, the alleged onset date of disability, through September 1, 2016, the date of the ALJ's decision.[4] [Tr. 39].

## V.    DISCUSSION

Plaintiff first argues that the "Commissioner erred in substituting her own 'medical' judgment for that of any physician." [Doc. #19-1 at 16-20]. She contends that "the ALJ erred by interpreting the raw medical data and objective diagnostic and clinical findings to formulate Ms. Gipps' function-by-function physical RFC without any medical authority." [Doc. #19-1 at 17].

She next argues that the ALJ erred in failing to provide good reasons to discount the favorable opinion of the treating pain management specialist Dr. Matteliano and in failing to develop the record. [Doc. #19-1 at 20-28].

## A.    Residual Functional Capacity

An ALJ has the responsibility to determine a claimant's RFC based on all the evidence of record. 20 C.F.R. §§404.1545(a)(1), 416.945(a)(1). The RFC is an assessment of "the most [the

---

housekeeping and as a certified nurses assistant ("CNA"). [Tr. 37].
[4] SSI benefits are not payable for any period prior to the month after the application is filed. See 42 U.S.C. §1382(c)(7); 20 C.F.R. §§416.335, 416.501. Plaintiff's date last insured for Title II benefits is June 30, 2013. [Tr. 21].

disability claimant] can still do despite [his or her]
limitations." 20 C.F.R. §404.1545(a)(1), 416.945(a)(1). Although
"[t]he RFC determination is reserved for the commissioner...an
ALJ's RFC assessment is a medical determination that must be
based on probative evidence of record.... Accordingly, an ALJ
may not substitute his own judgment for competent medical
opinion." Walker v. Astrue, No. 08-CV-0828(A)(M), 2010 WL
2629832, at *6 (W.D.N.Y. June 11, 2010)(quoting Lewis v. Comm'r
of Soc. Sec., No. 6:00CV1225(GLS), 2005 WL 1899, at *3 (N.D.N.Y.
Aug. 2, 2005)(internal citations omitted)). Nevertheless,
plaintiff has the burden to demonstrate functional limitations
that would preclude any substantial gainful activity. See 20
C.F.R. §§§404.1545(a)(3), 416.945(a)(3) ("In general, you are
responsible for providing the evidence we will use to make a
finding about your residual functional capacity."); 42 U.S.C.
§423(d)(5)(A)("An individual shall not be considered to be under
a disability unless he furnishes such medical and other evidence
of the existence thereof as the Commissioner of Social Security
may require.").

        Pursuant to 20 C.F.R. §§404.1527(c)(2) and 416.927(c)(2), a
treating source's opinion will usually be given more weight than
a non-treating source. If it is determined that a treating
source's opinion on the nature and severity of a plaintiff's
impairment is "well-supported by medically acceptable clinical

and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," the opinion is given controlling weight. 20 C.F.R. §§404.1527(c)(2), 416.927(c)(2). If the opinion, however, is not "well-supported" by "medically acceptable" clinical and laboratory diagnostic techniques, then the opinion cannot be entitled to controlling weight. Id. If the treating source's opinion is not given controlling weight, the ALJ considers the following factors in weighing the opinion: length of treatment relationship, frequency of examination, nature and extent of the treatment relationship, relevant evidence used to support the opinion, consistency of the opinion with the entire record, and the expertise and specialized knowledge of the source. See 20 C.F.R. §§404.1527(c)(2)-(6), 416.927(c)(2)-(6); Social Security Ruling ("SSR") 96-2P, 1996 WL 374188, at *2 (S.S.A. July 2, 1996). "While an ALJ may discount a treating physician's opinion if it does not meet this standard, the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" Pilarski v. Comm'r of Soc. Sec., No. 13-CV-6385-FPG, 2014 WL 4923994, at *2 (W.D.N.Y. Sept. 30, 2014)(quoting Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004)).

Here, the ALJ found that plaintiff had the RFC to perform the full range of light work, as defined

in 20 C.F.R. §404.1567(b) and 416.967(b) with
additional limitations. Specifically, the claimant
can occasionally lift and carry 20 pounds; can
frequently lift and carry 10 pounds; can sit for up
to 6 hours total in an 8-hour workday; and can stand
and/or walk for up to 6 hours total in an 8-hour
workday. She requires a sit/stand option that allows
her to stand, walk or stretch for up to 5 minutes
after sitting for 30 minutes, or sit for up to 5
minutes after standing or walking for 20, all while
remaining on task.  She can frequently stoop, kneel,
or crouch; is unable to crawl or climb ladders,
ropes, scaffolds; can perform simple, routine tasks
that can be learned after a short demonstration or
within 30 days; and can perform work [that] would not
be of a repetitive nature, such as on a production
line.

[Tr. 25].

      The regulations dictate the physical exertion

requirements of light work:

      Light work involves lifting no more than 20 pounds at
      a time with frequent lifting or carrying of objects
      weighing up to 10 pounds. Even though the weight
      lifted may be very little, a job is in this category
      when it requires a good deal of walking or standing,
      or when it involves sitting most of the time with some
      pushing and pulling of arm or leg controls. To be
      considered capable of performing a full or wide range
      of light work, you must have the ability to do
      substantially all of these activities. If someone can
      do light work, we determine that he or she can also do
      sedentary work, unless there are additional limiting
      factors such as loss of fine dexterity or inability to
      sit for long periods of time.

20 C.F.R. §404.1567.

      The administrative record in this case contains numerous

detailed treatment records, and medical opinions from treating

and other examining sources that relate the medical evidence to

what plaintiff can and cannot do functionally. Plaintiff
accurately points out that there are numerous disability
assessments, supported by functional limitation, by her treating
providers in the record and there is no dispute that plaintiff
was disabled from returning to her work as a Housekeeper and/or
CNA. [Tr. 37]. It is also undisputed that plaintiff did not work
after the first motor vehicle accident on July 28, 2012, that
the injuries sustained were due to the accident, and that
conservative treatment did not relieve her symptoms. After a
second motor vehicle accident on November 6, 2015, it is also
undisputed that plaintiff received medical attention and this
accident was an aggravating/activating event to a pre-existing
cervical and lumbar condition.

Notably, the ALJ did not rely on a treating doctor's
opinion regarding plaintiff's functional limitations in making
his RFC determination, as conceded by defendant. [Doc. #27-1 at
17-22; 33-34]. Our Circuit Court holds that "[i]n the absence of
supporting expert medical opinion, the ALJ should not engage in
his own evaluations of the medical findings." Balsamo, 142 F.3d
at 81 (quoting Filocomo v. Chater, 944 F. Supp. 165, 170
(E.D.N.Y. 1996)).

During the relevant period under review, there is no
opinion of record by a treating physician or other medical
provider that plaintiff was able to work and/or was ready to

return to work or was capable of doing light work with the limitations found by the ALJ.[5] Rather, the ALJ's decision in large part indicates that he impermissibly assessed plaintiff's RFC on the basis of bare medical findings, and substituted his own judgment for competent medical opinion. See Walker, 2010 WL 2629832, at *6.

This is not a case where plaintiff suffers relatively little physical impairment, such that the ALJ may render a common sense judgment about plaintiff's functional capacity. The ALJ acknowledged as much by designating plaintiff's cervicalgia, lumbago, headaches/migraines and depression with anxiety "severe." [Tr. 22].

Moreover, throughout the treating relationship with Dr. Matteliano, the doctor opined that plaintiff was temporarily totally disabled as a result of the motor vehicle accident in July 2012 and was unable to return to her job. The treatment notes contained detailed physical examination findings. Thereafter, plaintiff was a passenger in a second motor vehicle accident in November 2015. By then, plaintiff was no longer a

---

[5] Plaintiff correctly points out that the ALJ gave Dr. Balderman's consultative evaluation "greater weight," although the ALJ admitted that "Dr. Balderman did not otherwise identify limitations in plaintiff's ability to sit, stand, walk, or use her upper extremities." [Tr. 29]. Moreover, Dr. Balderman did not review any medical records, [Tr. 384], and evaluated plaintiff on one occasion in January 2014.

patient of Dr. Matteliano due to a change in insurance coverage. Plaintiff also treated with a primary care provider but was seen by a nurse practitioner from September 2012 through March 2016. [Tr. 640-70 (Treatment records Kathleen Ventry, ANP)]. These treatment records also contain detailed examination findings. In March 2016, a second set of cervical and lumbar MRIs were taken. There is no assessment from a treating physician or specialist in the record to compare the diagnostic imaging after the first and second motor vehicle accidents. After the second motor vehicle accident, plaintiff started pain management treatment with Dr. Siddiqui. [Tr.100]. These treatment records are not part of the administrative record.

Dr. Matteliano's treatment notes include detailed notations of physical examination of plaintiff's musckuloskeletal system (including gait, physical inspection, range of motion, cervical rotation, lumbar flexion, side bending, trunk turning, strength, straight leg raises, grip strength), observations, reports of electronic diagnostic testing and psychiatric status. [Tr. 325-62; 458-97; 489-505]. Similarly, Nurse Practitioner Ventry's treatment notes include physical examination notes including musculoskeletal, neurologic findings and psychiatric status. [Tr. 640-70]. After the second MVA, in January and February 2016, NP Ventry noted plaintiff was experiencing aggravated back and neck pain and had developed increased nerve pain down her

right leg. [Tr. 642, 645]. However, the ALJ's RFC determination makes no mention of any additional functional limitations due to the second MVA and there is no opinion or interpretation of the 2016 diagnostic imaging from a medical source. "When the record contains medical findings merely diagnosing the claimant's impairments without relating that diagnosis to functional capabilities, "the general rule is that the Commissioner may not make the connection himself.'"

Kain v. Colvin, No. 14-CV-650S, 2017 WL 2059806, at *3 (W.D.N.Y. May 15, 2017)(quoting Englert v. Colvin, 15-CV-564-FPG, 2016 WL 3745854, at *4 (W.D.N.Y. July 8, 2016)).

"Because the ALJ failed to cite to any medical opinion to support his RFC findings, the Court is unable to determine if the ALJ improperly selected separate findings from different sources, without relying on any specific medical opinion." Hogan v. Astrue, 491 F. Supp. 2d 347, 354 (W.D.N.Y. 2007).

> Where, as here, the medical findings and reports
> merely diagnose the claimant's impairments without
> relating the diagnoses to specific physical, mental,
> and other work-related capacities, the administrative
> law judge's "determination of residual functional
> capacity without a medical advisor's assessment of
> those capacities is not supported by substantial
> evidence." Given Plaintiff's multiple physical and
> mental impairments, this is not a case where the
> medical evidence shows "relatively little physical
> impairment" such that the ALJ "can render a common
> sense judgment about functional capacity."

Palascak v. Colvin, No. 1:11-CV-0592 MAT, 2014 WL 1920510, at *9 (W.D.N.Y. May 14, 2014): see also Kain, 2017 WL 2059806, at *3 ("An ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence.")(quoting Englert, 2016 WL 3745854, at *4 )); House v. Astrue, No. 5:11-CV-915 GLS, 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013)("[A]lthough the RFC determination is an issue reserved for the commissioner, an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings and as a result, an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence.")(internal citation and quotation marks omitted).

Because the ALJ did not give controlling weight to Dr. Matteliano's opinion and dismissed the opinions from other treating medical sources, there is no medical opinion regarding Gipps' functional capacity to complete the activities for light work with limitations as set forth in the RFC. [Tr. 33]; Martin v. Berryhill, No. 16-CV-6184-FPG, 2017 WL 1313837, at *3 (W.D.N.Y. Apr. 10, 2017)("Because the ALJ rejected Dr. Finkbeiner's opinion, the record lacks any medical opinion as to Martin's physical ability to engage in work at any exertional level on a regular and continuous basis in an ordinary work

setting. There is no medical opinion regarding her capacity to sit, stand, walk, or lift, which are necessary activities for sedentary work. See 20 C.F.R. §§404.1567(a), 416.967(a).").

While the Commissioner is free to decide that the opinions of acceptable medical sources and other sources are entitled to no weight or little weight, those decisions should be thoroughly explained. Sears v. Astrue, Civil Action No. 2:11-CV-138, 2012 WL 1758843, at *3 (D. Vt. May 15, 2012). Indeed, when an ALJ rejects all physician opinion evidence, an evidentiary deficit exists. "[E]ven though the Commissioner is empowered to make the RFC determination, '[w]here the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities,' the general rule is that the Commissioner 'may not make the connection himself.'" Martin, 2017 WL 1313837, at *3 (quoting Wilson v. Colvin, No. 13-CV-6286P, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015)).

"In light of the ALJ's affirmative duty to develop the administrative record, an ALJ cannot reject [or ignore] a treating physician's [opinion] without first attempting to fill any clear gaps in the administrative record." Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008)(quoting Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999)); see Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998)("Even if the clinical findings were

inadequate, it was the ALJ's duty to seek additional information

from [the treating physician] sua sponte.")).

> The proceedings before an ALJ are not supposed to be
> adversarial. Where there are deficiencies in the
> record, an ALJ is under an affirmative obligation to
> develop a claimant's medical history "even when the
> claimant is represented by counsel or ... by a
> paralegal." Perez v. Chater, 77 F.3d 41, 47 (2d
> Cir.1996); see also Pratts v. Chater, 94 F.3d 34, 37
> (2d Cir. 1996) ("It is the rule in our circuit that
> 'the ALJ, unlike a judge in a trial, must herself
> affirmatively develop the record' in light of 'the
> essentially non-adversarial nature of a benefits
> proceeding.' This duty ... exists even when ... the
> claimant is represented by counsel." (quoting
> Echevarria v. Secretary of Health & Human Servs., 685
> F.2d 751, 755 (2d Cir. 1982))).

Richardson v. Barnhart, 443 F. Supp. 2d 411, 423 (W.D.N.Y.

2006).

Because there is no medical source opinion or

functional assessment supporting the ALJ's finding that Ms.

Gipps can perform light work with limitations, the Court

concludes that the RFC determination is without substantial

support in the record and a remand for further

administrative proceedings is appropriate. See House, 2013

WL 422058, at *4 (citing Suide v. Astrue, 371 F. App'x 684,

689-90 (7th Cir. 2010) (holding that "the evidentiary

deficit left by the ALJ's rejection" of a physician's

reports, but not the weight afforded to the reports,

required remand.)).

On remand, the ALJ should develop the record as necessary to obtain opinions as to plaintiff's functional limitations from treating and/or examining sources, obtain a consultative physical examination and/or a medical expert review, obtain a functional capacity evaluation, and obtain treatment records from the pain management treater, Dr. Siddiqui [Tr. 100].

The Commissioner on remand should thoroughly explain her findings in accordance with the regulations. See Martin, 2017 WL 1313837, at *4 ("There were many avenues available to the ALJ to fill the gap in the record....")(citing Covey v. Colvin, 204 F. Supp. 3d 497, 507 (W.D.N.Y. 2016)). The Commissioner on remand, "should employ whichever of these methods are appropriate to fully develop the record as to [Gipps'] RFC." Id.

As noted earlier, the Court's role in reviewing a disability determination is not to make its own assessment of the plaintiff's functional capabilities; it is to review the ALJ's decision for reversible error. Because the Court has found the ALJ erred in failing to develop the record, it need not reach the merits of plaintiff's remaining arguments. Therefore, this matter is remanded to the Commissioner for further administrative proceedings consistent with this ruling. On remand, the Commissioner

will address the other claims of error not discussed herein.

The Court offers no opinion on whether the ALJ should or will find plaintiff disabled on remand. Rather the Court finds remand appropriate to permit the ALJ to develop the record accordingly.

## VI. CONCLUSION

For the reasons stated, plaintiff's Motion for Judgment on the Pleadings **[Doc. #19]** is **GRANTED**. Defendant's Motion for Judgment on the Pleadings **[Doc. #27]** is **DENIED**.

In light of the Court's findings above, it need not reach the merits of plaintiff's other arguments. Therefore, this matter is remanded to the Commissioner for further administrative proceedings consistent with this opinion. On remand, the Commissioner shall address the other claims of error not discussed herein.

This is not a Recommended Ruling. The parties consented to proceed before a United States Magistrate Judge [doc. #15] on September 25, 2018, with appeal to the Court of Appeals. Fed. R. Civ. P. 73(b)-(c).

SO, ORDERED at Bridgeport, Connecticut this 4th day of May 2019.

_____/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE